IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| United States of America, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | |
| v. ) | No. 18 C 8346 |
| ) | |
| ) | |
| Nedjo Milosevic ) | |
| ) | |
| Defendant. ) | |
| ) | |

<u>Memorandum Opinion and Order</u>

In this action, the United States seeks a judgment revoking defendant Nedjo Milosevic's United States citizenship and cancelling his certificate of naturalization. Before me is the government's motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), which I deny for the following reasons.

Defendant is a former citizen of Yugoslavia and subsequently of the Republic of Bosnia and Herzegovina. He applied for refugee status with the former Immigration and Naturalization Service ("INS")[1] in September of 1998 and was admitted to the United States as a refugee on July 20, 1999. He later applied for an adjustment of status, and when that application was approved in November of

---

[1] As the government states, the INS ceased to exist on March 1, 2003, and many of its functions were transferred to the Department of Homeland Security. *See* Homeland Security Act of 2002, Pub. L. No. 107-296, 110 Stat. 2135 (Nov. 25, 2002).

2001, he became a permanent resident retroactively as of the date of his admission. In May of 2004, defendant applied to become a naturalized United States citizen. That application was also approved, and defendant was admitted to citizenship and received a certificate of naturalization on November 2, 2004.

The government now seeks to revoke defendant's citizenship and to cancel his certificate of naturalization pursuant to 8 U.S.C. § 1451(a), which authorizes such relief when citizenship and naturalization were "illegally procured" or were "procured by concealment of a material fact or by willful misrepresentation." The complaint articulates five separate counts, but the Rule 12(c) motion seeks judgment only on Count IV, which claims that defendant "illegally procured" citizenship and naturalization by seeking and obtaining refugee status—a classification from which all of the immigration benefits he later received ultimately derives—when he did not, in fact, meet the statutory definition of a "refugee."

As the government observes, the statute defines a "refugee" as "any person who is *outside any country of such person's nationality*...who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution," 8 U.S.C. § 1101(a)(42) (emphasis added). The complaint alleges that, "[a]t all times relevant to determining his eligibility for refugee status, Defendant was living in what

2

is today the Republic of Bosnia and Herzegovina, and specifically in Republika Srpska, an autonomous federal entity within the Republic of Bosnia and Herzegovina populated largely with and controlled by ethnic Serbs." Compl. at ¶ 17, 92. The government further alleges that defendant "was a resident of Bosnia and Herzegovina until at least June 1996," Compl. at ¶ 37, and that he "was not residing in Serbia (Federal Republic of Yugoslavia) during the war in Bosnia and for at least some time thereafter," *id*. at ¶¶ 16, 91. To each of these allegations, defendant responds that "[a]t all relevant times, Defendant has been ethnically cleansed and displaced from his pre-war residence in the Municipality of Zivinice, Bosnia and Herzegovina." Ans. at ¶¶ 16-17, 37, 92. In the government's view, these answers admit all that is required for a judgment in its favor on Count IV. I disagree.

"American citizenship is a precious right," and its loss may engender severe consequences, especially "when the person has enjoyed his citizenship for many years." *Costello v. United States*, 365 U.S. 265, 269 (1961). Accordingly, revocation of citizenship is a "drastic measure," *Schneider v. Rusk*, 377 U.S. 163, 168 (1964), requiring evidence that is "clear, unequivocal, and convincing." *Fedorenko v. U.S*. 449 U.S. 490, 505 (1981) (citations omitted). The government argues that defendant's answers effectively admit that he was not, "at relevant times," outside the country of his nationality, rendering him ineligible for the

refugee visa that authorized his lawful entry into the United States.

It is true that "a naturalized citizen's failure to comply with the statutory prerequisites for naturalization renders his certificate of citizenship revocable as 'illegally procured' under 8 U.S.C. § 1451(a)." *Fedorenko v. United States*, 449 U.S. 490, 513 (1981). It is also true that lawful admission to the United States as a permanent resident is one such statutory prerequisite, *see* 8 U.S.C. § 1427(a), and that in defendant's case, his lawful admission was premised upon his classification as a refugee under §§ 1101(a)(42), 1159(b)(3). Accordingly, if the government establishes that defendant was ineligible for the refugee visa authorizing his admission to the United States, his citizenship may be revoked as "illegally procured." *See United States v. Kairys*, 782 F.3d 1374, 1376, n. 1 (7th Cir. 1986) ("[a]n applicant must enter the United States pursuant to a valid visa to obtain citizenship. An applicant ineligible under the immigration laws cannot obtain a valid visa."). But it has not done so on the pleadings.[2]

---

[2] I note in passing that while both parties contend that the standard that applies to the government's motion is "the same standard as a motion to dismiss under Rule 12(b)(6)," Mot. at 4 (quoting *Gill v. City of Milwaukee*, 850 F.3d 335, 339 (7th Cir. 2017)); Resp. at 2-3, it is the summary judgment standard that governs here. *See Alexander v. City of Chicago*, 994 F.2d 333, 336 (7th Cir. 1993). In *Alexander*, the court explained that while the 12(b)(6) standard applies to Rule 12(c) motions that raise "[R]ule

4

To begin, the government's use of the phrase, "at all relevant times," in its allegations concerning defendant's whereabouts raises a legal question that the parties' submissions do not answer: When must a person be outside his or her country of nationality to be properly classified as a refugee? If, as one might suppose, the answer is, "at the time he or she applies for that classification," defendant's answer *denies* the only paragraph alleging his whereabouts at that time. *See* Ans. at ¶ 69 (denying that "at the time Defendant applied for classification as a refugee, he willfully misrepresented that during the war he was residing in Serbia (Federal Republic of Yugoslavia), when he was, in fact, residing in Bosnia and Herzegovina."). Moreover, while the complaint states that defendant filed his application for refugee status on September 3, 1998, it is conspicuously silent as to defendant's residence on that date. Indeed, the bulk of the

---

12(b) defenses regarding procedural defects," where Rule 12(c) is invoked "in its customary application to attempt to dispose of the case on the basis of the underlying substantive merits," the "appropriate standard is that applicable to summary judgment."). *Id.* at 336. *See also United States v. Luna*, No. 17 CV 1472,, at *2 (N.D. Ill. Mar. 8, 2019) (Gottschall, J.) (applying summary judgment standard to Rule 12(c) motion in denaturalization action); *United States v. Faris*, No. 17-CV-295-SMY-DGW, 2018 WL 3373982, at *1 (S.D. Ind., July 11, 2018) (same). Because the government's motion is merits-based and does not assert any procedural ground for judgment that could be raised under Rule 12(b), I apply the summary judgment standard, though my review is limited to the pleadings and their exhibits. *See Luna,* 2019 WL 1098936, at 2.

5

complaint focuses on defendant's whereabouts and activities during the period between December 1992 and June 1996. *See* Compl. at ¶¶ 37-42. The only substantive event alleged to have occurred in 1998 was the birth of defendant's son Aleksandar—*in the Federal Republic of Yugoslavia*. *See* Compl. at ¶ 10.

In addition, the government's careful description of defendant's residence at relevant times as within "what is today the Republika Srpska, an autonomous federal entity within the Republic of Bosnia and Herzegovina," Compl. at ¶¶ 17, 92, raises further questions. The government does not explain its choice of words, but the terms "autonomous federal entity" presumably have some significance. Absent some other explanation, a reasonable inference is that while the Republika Srpska is located within the physical boundaries of Bosnia and Herzegovina, the individuals who live there may be considered to live "outside" of Bosnia and Herzegovina in some politically relevant respect. Compounding this ambiguity, the complaint describes the geopolitical status of the Republika Srpska "today," even as the government suggests that "all relevant times" for purposes of Count IV preceded defendant's application for admission as a refugee.

For the foregoing reasons, I conclude that the record before me does not reflect the kind of "clear, unequivocal, and convincing" evidence that is required to establish the

government's entitlement to judgment. *Fedorenko v. U.S*. 449 U.S. 490, 505 (1981).

**ENTER ORDER:**

**Elaine E. Bucklo**
United States District Judge

Dated: September 27, 2019